IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YVONNE I. BRADLEY (YATES), | ) | |
| | ) | Civil Action No. 14-1698 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| BRIAN MILLER, *et al.*, | ) | |
| | ) | ECF Nos. 23 , 25 |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Yvonne Ican Bradley, a former inmate at Fayette County Prison, and who is currently incarcerated at the State Correctional Institute at Cambridge Springs (SCI-Cambridge Springs), initiated the instant action on December 16, 2014, pursuant to 42 U.S.C. § 1983. In her Amended Complaint (ECF No. 9), Plaintiff has alleged that the Defendants violated her rights under the First and Eighth Amendments of the United States Constitution. Defendants have filed Motions to Dismiss Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF Nos. 23, 25.) By Order of Court, Plaintiff was permitted to respond to Defendants' Motions by filing either a Second Amended Complaint or a Brief in Opposition to the Motions to Dismiss. (ECF No. 27.) Because Plaintiff failed to respond by the September 1, 2015 deadline set by the Court, the Court will review the pending Motions without the benefit of her response. For the reasons stated below, the Motion to Dismiss filed by Defendants Miller, Zavada, Ambrosini, Chapman, and Ouland will be granted in part and denied in part, and the Motion to Dismiss filed by Defendant Dr. DiLeo will be

1

denied. Plaintiff will be permitted to file a Second Amended Complaint in order to correct the deficiencies identified herein, except on those claims that will be dismissed with prejudice.

I.  **Plaintiff's Allegations**

Plaintiff was an inmate at the Fayette County Prison ("the Prison") during the 21 month time period that is relevant to this action.[1] The following allegations are contained within her Amended Complaint. (ECF No. 9.)

Plaintiff alleges that for 15 months of her 21 month incarceration, she was exposed to "communicable diseases" because she was made to sleep and reside in overcrowded quarters alongside residents who had yet to be medically approved for general population. Id. at ¶ 12. Plaintiff states that during this time she was not provided with clean linen and was forced to share one toilet and one shower with the 30 to 40 other women in her housing unit. Id. at ¶¶ 13, 14. Plaintiff's quarters contained black mold, large insects and rodents. Id. at ¶ 14.

Plaintiff further alleges that for fourteen months she was repeatedly antagonized by C.O. Lorie Chapman ("Chapman"). Id. at ¶ 15. She states that Chapman issued her frivolous misconducts for things such as possession of puzzle books and greeting cards and for using the telephone to resolve legal matters. Id. at ¶ 16. Chapman also "trashed" her personal items including pictures, letters from her family, and purchased commissary items. Id. at ¶ 17. Plaintiff also alleges that C.O. Jessica Ouland ("Ouland") called her a "nigger" and "trashed" her religious material following a failed attempt to organize an assault on her by twelve to sixteen fellow inmates. Id. at ¶¶ 18, 19.

---

[1] Though Plaintiff does not specify whether she was incarcerated as a pre-trial detainee or as a convicted and sentenced inmate, Defendants have asked the Court to take judicial notice that the Plaintiff was convicted of theft by deception on May 28, 2013, and sentenced to 21 months to five years of incarceration. (ECF No. 26 at n.1, citing Allegheny Criminal Docket no. CP-26CR-0000112-2013.) The Court will therefore assume that Plaintiff was a convicted and sentenced inmate at the times relevant to this lawsuit. (ECF No. 26 at 4.)

2

Plaintiff alleges that Deputy Warden Michael Zavada ("Zavada") denied her the opportunity to defend or appeal misconduct charges, and frequently punished her with solitary confinement sanctions. Id. at ¶ 20. Zavada also punished her and other inmates in Plaintiff's unit by denying them writing materials for 60 days. Id. at ¶ 21.

Plaintiff also alleges that for 15 months, Warden Miller ("Miller") disregarded her complaints regarding denial of access to Fayette County Prison's law library. Id. at ¶ 22. She also alleges that Fayette County Commissioner Al Ambrosini ("Ambrosini") disregarded the living conditions in the Prison as well as the treatment of the inmates by the Prison's correctional officers. Id. at ¶ 23.

Finally, Plaintiff alleges that on or about April 11, 2014, Dr. Dominic DiLeo[2] ("Dr. DiLeo") informed her that the growing mass in her neck was "nothing to be concerned about," and noted in Plaintiff's medical record that no follow up care was necessary. Id. at ¶¶ 24, 25. Dr. DiLeo made this determination despite Plaintiff's assertion that "something was wrong." Id. at ¶ 29. Plaintiff has recently been diagnosed with cancer following removal of the mass that Dr. Dilio said was "nothing to be concerned about." Id. at ¶ 30.

Plaintiff states that Defendants should be "held accountable and mandated to change its grievance, misconduct, and housing policies." She requests punitive damages to compensate for her "pain, mental anguish, and follow-up care."

## II.  Standard of Review

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward

---
[2] Dr. DiLeo is employed by PrimeCare Medical Inc. to provide medical care to inmates incarcerated at Fayette County Prison pursuant to a contract between PrimeCare Medical Inc. and Fayette County. (ECF No. 24 at 1.)

3

> with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); *see also* Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

When considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a §1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless

4

doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).

### III.     **The Motions to Dismiss**

Defendants Miller, Zavada, Ambrosini, Chapman, and Ouland (collectively, "the County Defendants") move to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6). (ECF No. 25.) The County Defendants aver that the conditions of confinement at the Prison alleged by Plaintiff do not rise to the level of cruel and unusual punishment prohibited by the Eighth Amendment of the United States Constitution. They further insist that the conditions claimed by Plaintiff constitute routine discomforts associated with prison life.

The County Defendants aver that the claims against Chapman and Zavada arising from alleged frivolous misconducts also fail to state a claim upon which relief can be granted. They argue that Plaintiff has no constitutional right to be free from the filing of false or frivolous misconduct charges, and also assert that Plaintiff did not suffer harm sufficient to implicate a protected liberty interest and thus a denial of due process.

The County Defendants further support their Motion to Dismiss by averring that racial epithets, though offensive, do not implicate the Eighth Amendment, and, therefore, Ouland did not cause Plaintiff actionable harm. They argue that Plaintiff's allegation that she was prevented from using the Prison's law library by Miller fails to state a claim because Plaintiff has not alleged that she suffered harm sufficient to state an access to courts claim. The County Defendants assert that the claim against Commissioner Ambrosini is conclusory and not

supported by any factual allegation and is further improperly based on the principle of *respondeat superior*.

Defendant Dr. DiLeo also moves to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6). (ECF No. 23.) Dr. DiLeo asserts that his medical treatment of the Plaintiff did not amount to a constitutional violation under the Eighth Amendment. While Dr. DiLeo concedes that Plaintiff has a serious medical condition, he avers that he utilized his best professional judgment in treating the Plaintiff and therefore he was not deliberately indifferent to her medical needs.

## IV. Discussion

### A. Conditions of Confinement

The Eighth Amendment "was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions." Whitley v. Albers, 475 U.S. 312, 318 (1986) (citation and internal quotations omitted). Thus, the Eighth Amendment's Cruel and Unusual Punishment's Clause does not apply until "after sentence and conviction." Graham v. Connor, 490 U.S. 386, 392 at n.6 (1989). It imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court set forth the standard for alleged violations of the Eighth Amendment while addressing non-medical conditions of confinement. The Court held that the prisoner must prove that prison officials acted with deliberate indifference that deprived him of "'the minimal civilized measure of life's necessities.'" Id. at 298-99, 301-05 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

6

In determining whether conditions of confinement violate the Eighth Amendment, courts consider the totality of the circumstances within the facility. Tillery v. Owens, 907 F.2d 418, 426 (3d Cir. 1990). The Supreme Court explained in Rhodes v. Chapman that conditions of confinement, "alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities." 452 U.S. 337, 347 (1981). Such a deprivation would constitute cruel and unusual punishment under the Eighth Amendment, but conditions that do not rise to this level, even if harsh and restrictive, are not unconstitutional as they are "part of the penalty that criminal offenders pay for their offenses against society." Rhodes at 347. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991). Judged against the aforementioned benchmarks, the allegations in the Amended Complaint will now be reviewed.

1. **Housing of inmates alongside new inmates who had not yet been screened and cleared by the prison's medical staff for general population**

Plaintiff first alleges that her constitutional rights were violated by the County Defendants' policy of housing inmates alongside newly admitted inmates who had not yet been medically screened for infectious diseases. Plaintiff claims that she was continually exposed to communicable diseases because she had to sleep and reside in overcrowded quarters alongside inmates who had not been medically screened for general population. The Court construes these allegations to be a claim of cruel and unusual punishment in violation of the Eighth Amendment.

7

"[A] prisoner may state a cause of action under the Eighth Amendment when he alleges that prison officials have, with deliberate indifference, exposed him to a serious, communicable disease that poses an unreasonable risk of serious damage to the prisoner's future health." Clark v. Williams, 619 F. Supp. 2d 95, 105-06 (D. Del. 2009) (citing Helling v. McKinney, 509 U.S. 25, 33–35 (1993)). The Supreme Court stated in Helling v. McKinney that housing inmates in overcrowded cells alongside individuals with infectious maladies was "one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed." 509 U.S. 25, 33 (1993) (citing Hutto v. Finney, 437 U.S. 678, 682 (1978)).

In Lareau v. Manson, the Second Circuit held that a prison's policy of housing inmates who had not been medically screened for infectious diseases alongside other inmates created a threat so serious to both pre-trial detainees and sentenced inmates that it rose to the level of punishment in violation of the Due Process Clause and also constituted an inadequate medical practice in violation of the Eighth Amendment because it constituted an "(omission) sufficiently harmful to evidence deliberate indifference to serious medical needs." 651 F.2d 96, 109 (2d Cir. 1981) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The court in Lareau went on to say that "it is unnecessary to require evidence that an infectious disease has actually spread in an overcrowded jail before issuing a remedy." Id.

Plaintiff has alleged facts sufficient to support a cause of action for a violation of her rights with respect to the County Defendants' policy of housing inmates who have not been medically screened for communicable diseases alongside other inmates. However, because Plaintiff was transferred to a different prison facility, her claim for injunctive relief is rendered

moot. *See* Oliver v. Thornburgh, 587 F. Supp. 380, 381 (E.D. Pa. 1984). While these alleged constitutional violations are enough to state a claim for which nominal and punitive relief could be granted, it is unclear whether Plaintiff suffered any physical harm as a result of the County Defendants' policy, such as harm from having contracted an infectious disease or illness, which may entitle her to compensatory damages. Accordingly, Plaintiff will be permitted to amend this claim to better state the extent of her injuries and to clarify the relief sought.

### 2. **Jail Overcrowding**

Plaintiff next alleges that she was forced to share one toilet and one shower with 30-40 other women in her housing unit for a period of fifteen months. The Court will also construe this claim to be one for a violation under the Eighth Amendment.

The most important issue in determining whether an inmate's Eighth Amendment rights have been violated by having to share facilities is not the number of prisoners sharing those facilities; it is whether the inmate has suffered harm as a result of the overcrowding. Lindsey v. Shaffer, 411 F. App'x 466, 468 (3d Cir. 2011). An Eighth Amendment violation could be found if the lack of lavatory access is "particularly dehumanizing, results in unsanitary conditions, or endangers the health of the prisoner", but is less likely to be found if the only effect is to cause occasional delays in the prisoner being able to relieve their bodily functions. Lindsey, 411 F. App'x at 268. Further, the Eighth Amendment does not require that a prisoner have access to frequent or comfortable showers. Stafford v. DeRose, 2013 WL 877133, at *6 (M.D. Pa. Mar. 8, 2013). Even the presence of black mold in a prison shower was not sufficient to establish a constitutional violation "where the inmate plaintiff [did] not presented any facts alleging a substantial risk of harm". Stafford at *6 (citing Nickles v. Taylor, 2010 WL 1949447 * 5 (D.N.J. May 14, 2010)).

9

Plaintiff has alleged that she was forced to share a shower and a toilet with 30-40 other inmates, but has not alleged how she suffered harm due to these overcrowded conditions. Plaintiff has thus failed to state a claim upon which relief can be granted. However, Plaintiff will be permitted to amend this claim to clarify whether she suffered harm as a result of having to share these facilities.

### 3. Presence of black mold, large insects and rodents in Plaintiff's quarters

Plaintiff next alleges that there was black mold, large insects and rodents in her quarters for a period of fifteen months.

The Supreme Court held in Hutto v. Finney that the length of confinement under particular conditions is important in determining whether the confinement satisfies constitutional standards. 437 U.S. 678, 686-87 (1978). "A filthy, overcrowded cell … might be tolerable for a few days and intolerably cruel for weeks or months." Id. An inmate must also allege how the conditions of his confinement "jeopardized, or potentially jeopardized, his health, or caused the cell to be unfit for habitation", as mere discomfort in the inmate's quarters does not rise to the level of cruel and unusual punishment. Mitchell v. Dodrill, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010). *See also* Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir.1996) (sixteen months of infestation coupled with substantial physical harm was sufficient to satisfy objective element of Eighth Amendment claim).

In addition to the objective requirement of harm or risk of harm resulting from conditions of confinement, an inmate must also show deliberate indifference on the part of those responsible for the conditions of confinement. Mitchell at 467. "[T]he standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety." Id. (citing Farmer, 511 U.S. at

837, 114 S.Ct. 1970). *See also* Oliver v. Thornburgh, 587 F. Supp. 380, 382-83 (E.D. Pa. 1984) ("Allegations of tacit approval by prison authorities of conditions or conduct arguably violative of constitutional rights have been recognized as sufficient to establish a § 1983 claim").

Plaintiff has asserted that her quarters were infested with rodents, large insects, and black mold for a period of fifteen months. While this time period may be sufficient to state a claim for cruel and unusual punishment, Plaintiff has failed to allege how these conditions "jeopardized, or potentially jeopardized, [her] health, or caused the cell to be unfit for habitation". Mitchell v. Dodrill, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010). Further, Plaintiff has not sufficiently alleged whether those responsible for the conditions of confinement at the Prison knew of, and were deliberately indifferent to, the alleged unconstitutional conditions. Plaintiff will be permitted to amend this claim to address these issues.

### 4. **Failure to provide Plaintiff with clean linen**

Plaintiff alleges that the County Defendants failed to provide her with clean linen for a period of fifteen months.

The standard for an Eighth Amendment conditions of confinement claim is whether prison officials have acted with deliberate indifference that resulted in the inmate being deprived of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). As discussed *supra*, the Eighth Amendment does not require that prisons be comfortable, and an inmate must allege some harm or risk of harm to sufficiently state a conditions of confinement claim. Mitchell v. Dodrill, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010). *See also* Kost v. Kozakiewicz, 1 F.3d 176, 188 (3d Cir. 1993) (prisoner's allegation that prison officials provided him with dirty mattress and linen resulting in head and body lice infestation was sufficient to state an Eighth Amendment claim).

11

Plaintiff has failed to allege the harm or risk of harm accompanying the County Defendant's failure to provide her with clean linen for a period of fifteen months. Thus, she has failed to state a claim upon which relief can be granted. Plaintiff, however, will be permitted to amend this claim to clarify whether she suffered harm as a result of this particular condition of confinement.

### 5. Denial of writing material for 60 days

Plaintiff alleges that she was denied the privilege of using writing materials for a period of 60 days as part of a mass punishment for a transgression that she was not involved in. Because this deprivation does not rise to the level of cruel and unusual punishment under the Eighth Amendment, this claim will be dismissed with prejudice.

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights." Price v. Johnston, 334 U.S. 266, 285 (1948). To successfully state an Eighth Amendment claim for a denial of "privileges", an inmate would need to show that such a deprivation was "sufficiently serious and that the prison official was deliberately indifferent to his plight." Pepper v. Carroll, 423 F. Supp. 2d 442, 449 (D. Del. 2006) (quoting Todd v. Walters, 166 F. App'x 590, 592 (3d Cir. 2006)). To establish such a deprivation, an inmate would have to show that they were denied the "the minimal civilized measures of life's necessities." Pepper at 448 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The court in Pepper v. Carroll found an inmate's access to writing materials, among other things, to be a privilege not constituting a necessity, and thus held that the denial of such a privilege does not amount to a sufficiently serious deprivation under the Eighth Amendment. 423 F. Supp. 2d 442, 448 (D. Del. 2006).

12

Plaintiff's allegation that she was denied the privilege of using writing materials for a period of 60 days does not sufficiently state an Eighth Amendment claim for cruel and unusual punishment. Accordingly, it will be dismissed with prejudice.

**B. Frivolous Misconduct Charges/Denial of Right to Defend or Appeal Misconducts**

Plaintiff next alleges that Chapman filed frivolous misconduct charges against her and that Zavada denied her the opportunity to defend or appeal these misconduct charges.

It is well established that the act of filing a false disciplinary charge does not itself violate a prisoner's constitutional rights even if it may result in the deprivation of a protected liberty interest. *See* Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982 (1988). Instead, inmates have the right not to be deprived of a protected liberty interest without due process of law. Thus, where the prisoner is provided due process, no constitutional violation results from being falsely accused of a misconduct. *See* id. at 952-53 (holding that "the mere filing of [a false] charge" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and he had the opportunity to rebut the unfounded or false charges"); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonell, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation); Strong v. Ford, 108 F.3d 1386, published in full-text format at 1997 U.S. App. LEXIS 5176, 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by § 1983 when it does not result in the imposition of atypical hardship on the inmate in relation to the

13

ordinary incidents of prison life). *See also* Creter v. Arvonio, No. 92-4493, 1993 U.S. Dist. LEXIS 11016, 1993 WL 306425, at *7 (D. N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 U.S. Dist. LEXIS 12534, 1988 WL 91571, at *1 (D. N.J. Aug. 30, 1988) (determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest . . . where procedural due protections were provided").

The threshold question is whether the sanction imposed impacted a constitutionally protected liberty interest which would invoke procedural due process protections. In Sandin v. Conner, the Supreme Court held that an inmate's discipline in segregated confinement "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. 472, 486 (1995). *See also* Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (explaining that administrative or punitive segregation alone will rarely be enough to establish an atypical deprivation sufficient to implicate a liberty interest). The Third Circuit held in Smith v. Mensinger that seven months of disciplinary confinement did not violate a protected liberty interest of an inmate. 293 F.3d 641, 654 (3d Cir. 2002). *See also* Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (holding that an inmate's confinement in administrative custody for a period of fifteen months was not an atypical and significant hardship implicating a liberty interest).

As a result of the misconduct charges filed against Plaintiff, she was sanctioned to solitary confinement. Plaintiff does not provide dates for when these misconducts were issued, or indicate how long she was in solitary confinement. However, even assuming Plaintiff spent all twenty-one months of her custody in solitary confinement, this amount of time is not sufficient to establish an atypical and significant hardship that would implicate a liberty interest and entitle her to procedural due process protections. Thus, Plaintiff's claims against both

Chapman and Zavada that stem from the issuance of false misconducts do not state a claim for relief and will be dismissed with prejudice.

### C. Destruction of Personal Belongings/Religious Material

Plaintiff claims Ouland "trashed" her religious material and that her personal belongings were "trashed" by Chapman.

In Hudson v. Palmer, the Supreme Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." 468 U.S. 517, 533 (1984). Claims for damage to the personal property of an inmate fail to state a claim under the Due Process Clause when prison grievance processes or state tort law actions provide an inmate with meaningful post-deprivation remedies. Washington v. Grace, 445 F. App'x 611, 616 (3d Cir. 2011) (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984)). Plaintiff had post-deprivation remedies available to her such as the Prison grievance process and a state tort action. Accordingly, she cannot state a claim for relief as to these allegations and therefore these claims will be dismissed with prejudice.

### D. Attempted Attack on Plaintiff

Plaintiff claims Ouland attempted to have her "jumped" by twelve to sixteen other inmates. However, Plaintiff fails to indicate whether she was physically harmed and what injuries she suffered as a result of this attempted attack. As alleged, these allegations do not support a claim for relief, but because it is unclear whether allowing Plaintiff to amend this claim would necessarily be futile, she will be permitted to do so in her second amended complaint.

### E. Verbal Harassment

Plaintiff claims that Ouland belittled her with the use of racial epithets. Her allegations are unfortunate if true, but verbal harassment alone does not give rise to a constitutional violation. *See* Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993). "Racially discriminatory statements, racial slurs and epithets, without more, . . . do not establish liability under § 1983." Owens v. Leith, 2007 WL 928139, at *4 (D.N.J. Mar. 27, 2007). Therefore, these allegations do not support any claim for relief that can be granted and will be dismissed with prejudice.

**F. Access to Courts**

Plaintiff next alleges that she was denied access to the Prison's law library and her complaints were ignored by Miller. The Court will construe this to be a claim for a violation of her right to access the courts.

In order to state a First Amendment access to courts claim, a plaintiff must show an actual injury, such as the "loss or rejection of a legal claim." Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997). The underlying lost claim, whether past or potential, must be nonfrivolous and arguable, and also must be described in the complaint. Christopher v. Harbury, 536 U.S. 403, 414-15 (2002); *see also* Lewis v. Casey, 518 U.S. 343, 355 (1996).

Plaintiff has not alleged that she lost a legal claim or had a legal claim rejected as a result of her being denied access to the Prison's law library. Her failure to suffer an injury is fatal to a claim that she was denied access to the courts. Plaintiff, however, will be permitted to amend her complaint to specify any injury that she may have suffered as a result of being denied access to the law library.

**G. Deliberate Indifference to Medical Care**

16

Plaintiff alleges Dr. DiLeo disregarded her concerns over a growing mass in her neck. She claims that Defendant Dr. DiLeo was deliberately indifferent to her serious medical needs through his disregard of her concerns and through his failure to diagnose and treat this mass. Plaintiff further alleges that she has been diagnosed with cancer following the removal of the mass, but has not specified whether the mass itself was cancerous.

In order to state a claim for inadequate medical care amounting to cruel and unusual punishment under the Eighth Amendment, a plaintiff must allege two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). The second prong requires the court to subjectively determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). Disagreement over the treatment provided or negligence on the part of the prison official do not give rise to a constitutional violation, as "[a]llegations of medical malpractice are not sufficient to establish a [C]onstitutional violation." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

17

While a cancerous mass almost assuredly qualifies as a sufficiently serious medical need, it is not clear whether the mass observed by Dr. DiLeo during Plaintiff's stay at the Prison was itself cancerous. Further, while Plaintiff has alleged deliberate indifference on the part of Dr. DiLeo, she has not expounded upon the treatment she received while in the Prison and how Dr. DiLeo's actions were more than just mere medical negligence. Plaintiff should amend this claim to clarify whether the mass observed by Dr. DiLeo was itself cancerous and further explain the extent of the medical care provided to her by Dr. DiLeo.

### H. Disregard of Conditions by Ambrosini

Plaintiff claims that Ambrosini disregarded the living conditions at the Prison and her complaints about inappropriate treatment. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

As it is written, Plaintiff's claim against Ambrosini seems to be based only upon his supervisory authority over the Prison as Fayette County Commissioner, and this is not sufficient to demonstrate his personal involvement in any of the alleged wrongdoing. In order to maintain a claim against Ambrosini, Plaintiff must specify how he is liable as a supervisory defendant. Plaintiff should amend her claims against Ambrosini to specify how he is liable as a supervisor. *See* Barkes v. First Correctional Medical, Inc., 766 F.3d 307, 316 (3d Cir. 2014) (*overruled on other grounds sub. nom.* Taylor v. Barkes, 135 S. Ct. 2042 (2015)).

### I. Failure to Follow Jail Policy

Plaintiff has also alleged that the County Defendants failed to follow the jail policy outlined in the Fayette County Prison Handbook. This alleged transgression does not rise to the level of a constitutional violation.

An allegation that a prison has failed to follow its own policies outlined in an inmate handbook does not state a constitutional claim upon which relief can be granted. "[A] prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983." Laufgas v. Speziale, 2006 WL 2528009, at *9 (D.N.J. Aug. 31, 2006). *See also* Gates v. Holladay, 2009 WL 1544376, at *4 (E.D. Ark. June 3, 2009) ("An internal jail policy or procedure does not create a constitutional right, nor does a correctional official's failure to follow such a regulation rise to the level of a § 1983 claim"). Plaintiff's claim that County Defendants violated her constitutional rights by not adhering to the policies of the Fayette County Prison Handbook fails to state a claim upon which relief can be granted. It will therefore be dismissed with prejudice. An appropriate Order follows.

**AND NOW** this _5th_ day of November, 2015;

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by County Defendants Miller, Zavada, Chapman, Ouland, and Ambrosini (ECF No. 25) is **GRANTED IN PART AND DENIED IN PART** as outlined below.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendant Dominic DiLeo (ECF No. 23) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims involving the following allegations are dismissed with prejudice: 1) denial of her privilege to use writing material for 60 days; 2) filing of frivolous misconducts; 3) denial of the right to defend or appeal misconducts; 4)

damage to or destruction of personal belongings; 5) damage to or destruction of religious material; 6) verbal harassment; and 7) failure to follow jail policy.

**IT IS FURTHER ORDERED** that Plaintiff is permitted to amend her claims involving the following allegations: 1) housing of inmates alongside new inmates who have not been medically screened for infectious diseases; 2) jail overcrowding (sharing facilities); 3) presence of black mold, rodents and large insects in quarters; 4) failure to provide clean linen; 5) attempted attack; 6) denial of access to law library; 7) deliberate indifference to medical needs; and 8) disregard of conditions and treatment.

**IT IS FURTHER ORDERED** that Plaintiff shall have thirty (30) days from the date of this Order to file a Second Amended Complaint addressing the claims that have not been dismissed with prejudice. If she fails to do so within the time allowed, then the court will dismiss her Amended Complaint for failure to state a claim upon which relief may be granted.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Yvonne I. Bradley (Yates)
OA-1258
SCI Cambridge Springs
451 Fullerton Ave.
Cambridge Springs, PA 16403